IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ZYEAIR SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | 8:14CV203 |
| | ) | |
| v. | ) | |
| | ) | |
| HILAND ROBERTS DAIRY CO., and | ) | MEMORANDUM OPINION |
| HILAND DAIRY FOODS COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the motion of defendants, Hiland Roberts Dairy Co., and Hiland Dairy Foods Company, LLC ("Hiland" or "defendants"), for summary judgment (Filing No. 29). The matter has been fully briefed by the parties. *See* Filing Nos. 31, 33, and 37. After review of the motion, the parties' briefs, and the relevant law, the Court finds as follows.

**BACKGROUND**

On July 15, 2014, plaintiff Zyeair Smith ("Smith" or "plaintiff") filed a complaint alleging "a single count of employment discrimination under 'federal, state, and Omaha municipal law.'" (Filing No. 31 at 2 (quoting Filing No. 1 at ¶ 29)). Plaintiff claims defendants' decision to terminate his employment was racially motivated (Filing No. 1). "Smith seeks relief under Title VII of the Civil Rights Act of 1964 and the

Nebraska Fair Employment Practices Act." (Filing No. 31 at 2 (quoting Filing No. 1 at 4)).

The facts surrounding Smith's termination are largely undisputed. *See* Filing Nos. 31, 33, and 37. On July 26, 2013, plaintiff was asked by another Hiland employee, Sam Edwards ("Edwards"), to clock Edwards out in violation of Hiland's written company policy (Filing No. 31 at 3-4; *see also* Filing No. 33 at 2 (admitting defendant's statements of material facts)). Smith used Edwards' company-issued ID badge to clock Edwards out after Edwards had already left company premises. *See* Filing No. 31 at 3-4. When Smith was later asked by Hiland managers whether he had clocked Edwards out, he initially denied the allegation. *See* Filing No. 33 at 3. After an internal investigation, Hiland terminated plaintiff's employment on July 31, 2013. (*Id.*) Defendants contend plaintiff was fired for "dishonesty and theft of company time." (Filing No. 31 at 4).

Plaintiff disputes defendants' contention that he helped Edwards steal company time. Edwards claims he "was entitled to extra break time because he had worked longer than 2 hours than his [regular] shift and . . . had not used all of his break time." (Filing No. 33 at 2). Defendants counter that Edwards' own admission provides that he left work early, and "was paid for a quarter hour that he was not entitled to." (Filing

No. 37 at 2-3). Defendants further argue as to whether the extra time worked entitled plaintiff to additional break time is immaterial because

> Edwards testified that he asked Smith to clock him out because he 'forgot' to clock out, not because he was entitled to additional break time . . . [and] breaks are to be taken in the break room . . . and an employee who wants to leave early would have to ask a supervisor for permission and clock out.

(*Id.* at 4-5).

After defendants terminated plaintiff's employment, plaintiff "filed a timely charge of discrimination . . . based on his status as an African-American with the United States Equal [Employment] Opportunity Commission and with the Omaha Human Rights and Relations Department." (Filing No. 1 at 1). The Omaha Human Rights and Relations Department ("OHHRD") found "reasonable cause to believe that plaintiff's race was a motivating factor in his termination by the defendant." (*Id.*) The Equal Employment Opportunity Commission ("EEOC") "issued a

right to sue letter on June 4, 2014." (*Id.* at 2).[1]  This suit followed.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is only proper when the Court determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009)(quoting Fed. R. Civ. P. 56(c)). The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). At the summary judgment stage, it is not the function of the Court to

---

[1] In his opposition, plaintiff provided 14 attachments (Filing No. 33). Attachment 10, Exhibit 10, purports to be the findings of the OHHRD (Filing No. 33-10). Attachment 14, Exhibit 17, purports to be the EEOC's adoption of the OHHRD findings (Filing No. 33-14). Defendants argue these exhibits are "inadmissable evidence that [are] also immaterial" because "Edwards did not lay a foundation for the admission of either document, did not authenticate the documents, and the documents are hearsay." (Filing No. 37 at 9-10). "Under Rule 56, this Court may consider only evidence that is competent and would be admissible at trial." *In re Acceptance Ins. Companies, Inc. Securities Litigation*, 352 F. Supp. 2d 940, 948 (D. Neb. 2004). The Court agrees with defendants that the exhibits do not meet Rule 56's standard and will thus not consider these exhibits in ruling on the present motion. The Court will also forgo consideration of any and all other exhibits not meeting Rule 56's standard.

"weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The United States Court of Appeals for the Eighth Circuit has explicitly held that "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal marks and citations omitted).

**LAW**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, prohibits racial discrimination in the workplace. 42 U.S.C. § 2000e-2(a)(1). Plaintiffs alleging Title VII violations "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). This initial burden may be established either by direct or circumstantial evidence. *Twiggs v. Selig*, 679 F.3d 990, 993 (8th Cir. 2012) (citing *McDonnell Douglas*, 411 U.S. at 802-05). Claims not relying on direct evidence are analyzed under "the three-part, burden-shifting

framework of *McDonnell Douglas* . . . ." *Smith v. URS Corp.*, 803 F.3d 964, 968 (8th Cir. 2015).[2]

At the initial stage of a racial discrimination claim under the *McDonnell Douglas* framework, a plaintiff must establish: (1) that he is a member of a protected group; (2) that he was meeting the employer's legitimate expectations;[3] (3) that he suffered an adverse employment action; and (4) that there are facts giving rise to an inference of unlawful discrimination. *See Rodgers*, 417 F.3d at 850 (internal citation omitted). Once the plaintiff satisfies his prima facie case, "the burden shifts

---

[2] Plaintiff questions whether the *McDonnell Douglas* framework should apply at the summary judgment stage (Filing No. 33 at 8 n.4). The Court's research reveals that the Eighth Circuit employs the framework under facts and circumstances similar to those presented in this case. *See e.g.*, *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933, 934-35, 937 (8th Cir. 2006); *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005) *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). The Court will therefore follow binding circuit precedent and employ the burden-shifting analysis.

[3] The Eighth Circuit recognized an inconsistency with its articulation of this second element. *See Riser v. Target Corp.*, 458 F.3d 817, 820 (8th Cir. 2006). The defendant articulates the "qualified" element (Filing No. 31 at 9), however, the Eighth Circuit, as recently as July of 2015 found the "legitimate expectations" element applicable. *See Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 903 (8th Cir. 2015). The Court notes that the determination of this issue is inconsequential given that defendants neither dispute plaintiff's qualifications nor that he was meeting their legitimate expectations at the time of his termination. However, the Court utilizes the "legitimate expectations" element in accordance with the Eighth Circuit's opinion in *Schaffhauser*.

to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action." *Schaffhauser*, 794 F.3d at 903 (citing *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)). If the employer satisfies its burden, "the 'presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination.'" *Id.* (quoting *Davis*, 685 F.3d at 681).

**DISCUSSION**

The Court finds that defendants' motion should be granted. Plaintiff offers no direct evidence of racial discrimination. Therefore, the Court will utilize the *McDonnell Douglas* burden-shifting framework to analyze plaintiff's claim. The Eighth Circuit has indicated that at the first stage of the *McDonnell Douglas* framework, plaintiffs need only produce "[a] minimal evidentiary showing [to] satisfy this burden of production." *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005) (internal citations omitted) *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc).

The Court finds that plaintiff fails to sufficiently satisfy his prima facie case, leaving no genuine issues of material fact for trial. It is undisputed that plaintiff has

established the first three of the four required elements under the first part of the *McDonnell Douglas* framework. The fourth element requires that plaintiff provide facts "giving rise to an inference of discrimination." *Rodgers*, 417 F.3d at 850 (internal citation omitted). This can be done "by putting forth facts that similarly situated employees, who are not African-American, were treated differently." *Id.* at 850-51 (internal marks and citations omitted).

To be considered "similarly situated" "the individuals used as comparators 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Id.* at 851 (quoting *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003)). The Eighth Circuit, at the prima facie level, applies "a 'low threshold,' requiring only that the employees are 'involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009) (quoting *Rodgers*, 417 F.3d at 851).

Smith alleges that Hiland's treatment of Bernie Turbes ("Turbes") and Steve Rezac ("Rezac") shows that similarly situated white employees were treated differently (Filing No. 33 at 9). Turbes is a leadman in a lab at Hiland (Filing No. 33 at 4). As a leadman, Turbes was paid for his breaks and lunches.

-8-

(*Id.*)  However, all employees are supposed to clock out when leaving company premises for any reason (Filing No. 31 at 6). Turbes failed to clock out when leaving company premises for his combined break and lunch periods.  (*Id.*)  Hiland alleges that confusion on the part of Turbes and the union led to Turbes' violation.  *See id.*  Turbes' confusion as to the company's policy and his violation thereof, led Hiland to post a notice advising that all employees must clock out before leaving company property.  (*Id.* at 7).

Steve Rezac was accused of and written up by Hiland for sleeping on the job (Filing No. 33 at 4).  Hiland alleges a distinction between Rezac's and Edwards' infractions by stating that "Rezac was not terminated because he was a long-term employee, there was a question about whether he was actually sleeping, and he was in his work area, even though it was not a proper place to take a break."  (Filing No. 31 at 7).

Defendants do not dispute that Smith, Turbes, and Rezac all had the same supervisor and were subject to the same standards.  *See* Filing Nos. 31 and 36.  The issue then becomes whether Smith, Turbes, and Rezac engaged in or were accused of the same or similar conduct but treated differently.  *See Wimbley*, 588 F.3d at 962 (quoting *Rodgers*, 417 F.3d at 851).  The Court finds that no genuine issues of material fact exist as to

whether Smith, Turbes, and Rezac were involved in or accused of the same or similar conduct.  The Court also finds the presence of mitigating and/or distinguishing circumstances that prevents concluding that Edwards is similarly situated to Turbes and Rezac.  Although the prima facie level requires a low threshold, and even after the Court draws all reasonable inferences in favor of the plaintiff, the Court finds that Smith has failed to satisfy his burden of showing the existence of a presumption of discrimination.

Because the Court finds that plaintiff has failed to establish his prima facie case, the Court need not discuss the rest of the *McDonnell Douglas* framework.  However, even if plaintiff could establish a prima facie case of discrimination, the Court finds that summary judgment in favor of defendants should still be granted.  Defendants have alleged that plaintiff's employment was terminated due to his violation of the time card policy, dishonesty, and time theft (Filing No. 31 at 10-11).  Defendants articulate a legitimate, non-discriminatory reason for its adverse employment action.  The burden then shifts back to plaintiff to show defendants' proffered reasons are merely pretexts.  To show pretext requires a more "rigorous" test.  *Wimbly*, 588 F.3d at 962 (internal citations omitted).  Given that the Court has found plaintiff unable to sufficiently

establish his lower-threshold prima facie case, Smith is certainly unable to show pretext under the more rigorous burden. Defendants' motion for summary judgment will be granted and plaintiff's claims will be dismissed with prejudice. A separate order will be entered herein in accordance with this memorandum opinion.

DATED this 6th day of June, 2016.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court